# EXHIBIT B

# EXHIBIT B-1

E-filed in the Office of the Clerk for the Business Court of Texas
2/5/2026 4:15 PM
Accepted by: Alexis Jennings
Case Number: 26-BC11B-0007

CAUSE NO. 26-BC11B-0007

| | |
|---|---|
| ENVIROTECH VEHICLES, INC., <br> *Plaintiff*, | THE BUSINESS COURT OF TEXAS |
| v. | ELEVENTH DIVISION |
| KINGBIRD VENTURES LLC and <br> EFRAIM DIVEROLI, <br> *Defendants*. | HARRIS COUNTY, TEXAS |

### PLAINITFF ENVIROTECH VEHICLES, INC.'S VERIFIED ORIGINAL PETITION AND REQUEST FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

Convicted fraudster Efraim Diveroli has made a career of shaking down honest companies through one extortionate scheme after another. After spending four years in jail for defrauding the United States and skirting international sanctions in order to sell illegal weapons, his latest tactics employ ██ ████████████ . Under the guise of ███████████ , and through corporate affiliates and co-conspirators such as Kingbird Ventures LLC and Diveroli Investment Group LLC, Diveroli announces ██████████████████████████████████ ███████████████████ .

Envirotech Vehicles, Inc., ("EVTV") is Diveroli's latest fraud target. ███████████ ████████████████████████████████████ ████████████████████████████—Diveroli has repeatedly sought to force EVTV ██████████████ ███████████ ██████████████ , which if consummated, will result in Diveroli receiving a significant personal windfall. But EVTV has not and will not back down to unlawful intimidation and tortious conduct.

Diveroli's latest, and most brazen, gambit to force EVTV  ████████ ████████

████████████████████████████████████████████████

████████████████████. In so doing, Defendants have spread lies about EVTV and its

principals, enlisted attorneys who have skirted their ethical obligations, and attempted to insert

themselves into a process they have no lawful part in. Due to Defendants' unlawful actions, ███

████████████████████████████████████████████████ if

Defendants are allowed to continue their interference and false statements.

Accordingly, Plaintiff EVTV files this Verified Original Petition and Application for

Temporary Restraining Order and Temporary Injunction against Defendant Kingbird to stop

Kingbird from its campaign of tortious interference.

## PARTIES

1.      Plaintiff Envirotech Vehicles, Inc. is a Delaware corporation headquartered in

Houston, Texas, with significant business operations in Houston, Texas and whose principal place

of business is located in Houston, Texas.

2.      Defendant Kingbird Ventures, LLC is a Wyoming limited liability company

headquartered in Miami, Florida. It may be served via its registered agent, Registered Agents Inc.,

30 N Gould St Ste R, Sheridan, Wyoming 82801.

3.      Defendant Efraim Diveroli is an individual residing in the State of Florida. Efraim

may be served with process by serving him at his personal residence at 4444 N. Michigan Avenue,

Miami Beach, Florida 33140 or wherever he may be found.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this case because the Texas Business

Court has civil jurisdiction concurrent with district courts in an action arising out of a qualified

transaction in which the amount in controversy exceeds $5 million. Tex. Gov't Code § 25A.004(d).

████████████████████████████████████████████████████████████

████████████████████████████ —far exceeds this Court's jurisdictional minimum—

indeed, ████████████████████████████████████████████████████

████████████████████████████ .

5.      This Court also has subject matter jurisdiction to determine and issue writs of injunction. *Id.* § 25A.004(a)(1).

6.      The Court has personal jurisdiction over Defendants Kingbird Ventures LLC and Efraim Diveroli under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042(2), because Defendants committed tortious acts, in whole or in part, within the State of Texas. The Texas long-arm statute reaches as far as federal constitutional requirements of due process allow. *Trigeant Holdings, Ltd. v. Jones*, 183 S.W.3d 717, 724 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

7.      Defendants intentionally and knowingly directed tortious conduct—tortious interference with contract, tortious interference with prospective economic advantage, and defamation—toward Texas resident EVTV and ████████████████████████████ ████████, with the expectation and understanding that the brunt of the harm would be felt in Texas. Defendants have established sufficient minimum contacts with Texas such that the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Greenfield Energy, Inc. v. Duprey*, 252 S.W.3d 721, 730 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

8.      Defendants, acting individually and in concert with one another, caused agents and representatives of theirs—Bront Bird and Joel E. Tasca of Greenberg Traurig—to perform tortious acts within Texas, including but not limited to ████████████████ by Bird and the sending

of deceptive and confusing communications by Tasca to █████████████████

████ ████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████. Under Texas law, the acts of an agent committed within the

scope of the agency are attributable to the principal for jurisdictional purposes. *Walker Ins. Serv.*

*v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 549 n.4 (Tex. App.—Houston [14th Dist.] 2003, no

pet.) ("For purposes of personal jurisdiction, the actions of an agent may be attributed to

the principal.").

        9.      Defendants purposefully availed themselves of the privilege of conducting

activities in Texas by directing actions toward a Texas resident and property; causing tortious

injury in Texas while engaging in conduct outside Texas; and reasonably anticipating the use of

the Texas court system in their expected scheme ███████████████████████

██████. *Trigeant Holdings, Ltd.*, 183 S.W.3d at 725 ("It is the quality and nature of the

defendant's contacts, rather than their number, that is important to the minimum-contacts

analysis."). Based on their tortious conduct, both Kingbird Ventures and Diveroli "could

reasonably anticipate being called into a Texas court." *Id.* (citing *World–Wide Volkswagen Corp.*

*v. Woodson,* 444 U.S. 286, 297 (1980)).

        10.     Venue as to all claims is proper in Harris County under Texas Civil Practices &

Remedies Code Section 15.002 and Texas Government Code Section 25A.006 because a

substantial part of the events giving rise to Plaintiff's claims transpired in Harris County. For

example, ██████████████████████████████████████████

███████████████████████ were made in or directed to individuals located in

Harris County.

## DISCOVERY AND RULE 47(C) STATEMENT

11.     Plaintiff requests that this case proceed under Discovery Level 2, pursuant to Texas Rule of Civil Procedure 190.4. EVTV seeks relief worth over $1,000,000 in the form of injunctions, actual damages, direct damages, indirect damages, incidental damages, consequential damages, special damages, interest, attorneys' fees, and costs.

## CONDITIONS PRECEDENT

12.     All conditions precedent have been met, have occurred, or have been waived.

## FACTUAL BACKGROUND

*A.  EVTV is a Houston based manufacturing company focusing on high-tech electric vehicles.*

13.     EVTV is a publicly traded company proudly based in Houston. It has been listed on the Nasdaq Stock Market under the ticker symbol EVTV since 2017. The company was founded in 2012 and focuses on the design, assembly, and sale of purpose-built, zero-emission, electric commercial vehicles in the United States.

14.     EVTV focuses on commercial, fleet, and institutional transportation markets, including commercial and last-mile delivery fleets; school districts and student transportation providers; municipal and public-sector transportation agencies; logistics, industrial, and service companies; and on colleges, universities, and large campuses. EVTV's sales fleet includes logistics and passenger vans, school and city transit buses, and flat-front trucks. EVTV also offers more specialized vehicles, such as electric forklifts, street sweepers, and neighborhood electric vehicles, as well as vehicle maintenance and safety inspection services.

15.     EVTV relocated its corporate headquarters to Houston, Texas in 2025, where it operates a new 86,000-square-foot corporate and manufacturing facility. The Houston facility serves as a hub for corporate leadership, manufacturing, fleet sales, engineering, and service operations.

5

16.     EVTV's executive team brings decades of commercial experience to the market. Phillip W. Oldridge is Chairman of the Board and Chief Executive Officer and a pioneer in the electric commercial vehicle industry. Oldridge has more than 30 years' experience in the manufacturing, official certification, and distribution of electric vehicles.

17.     Jason Maddox is EVTV's President and Interim Chief Financial Officer and Director. Maddox's career has centered on U.S.-based manufacturing, government procurement, and logistics-intensive operations. Maddox is the founder and CEO of Maddox Defense, Inc. and founder and former CEO of Maddox Industries LLC. Maddox assumed senior leadership at EVTV after EVTV's acquisition of Maddox Industries in 2024.

18.     Elgin Tracy is Chief Operating Officer of EVTV. Elgin served as COO of Maddox Defense from 2021 to 2024 and has extensive experience in the defense and oil & gas industries.

**B.**     ████████████████████████████████████████████.

19.     ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████

20.     ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████

---

1 ████████████████████████████████████████████████
████████████████████████████████

21. ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████

**C. EVTV and** ████████████████████████.

22. ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

23. ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████

24. ███████████████████████████████████████

████████████████████████████████████████████████

███████

25. ███████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████

7

26. ██████████████████████████████████

███████████████████████████████████████

████████████████████

27. ██████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████

28. ██████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████

29. ██████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

30. ██████████████████████████████████

███████████████████████████████████████

██████████████████████████████

31. ██████████████████████████████████

███████████████████████████ █████████████████████

██████████████████████████████

───────────────────────────

[2] ██████████████████████████████████████

████████████████████████████

32.    ████████████████████████████████████████████

████████████████████████████████████████████

33.    ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

**D.  *Diveroli has historically enriched himself through fraud targeting corporate actors.***

34.    Diveroli, a felon convicted of conspiracy to commit fraud against the United States government, has continued to play fast and loose with the law even after serving time. Diveroli has a history of making baseless accusations and threats of legal action against companies, hoping for a quick payday when these surprised entities settle.

35.    Efraim Diveroli conducts his schemes behind a layer of corporate structures. Relevant here, Diveroli is the so-called strategic advisor to the Diveroli Investment Group LLC ("DIG") a Miami-based, family-run investment firm managed by his siblings.

36.    Publicly, DIG describes its focus as value-oriented investments in public and private companies, including special situations and strategic engagement with portfolio companies.[3] Its public launch announcement states that Diveroli provides advisory input based on his experience in government contracting, regulated industries, and complex transactions, and that his role includes contribution to research, evaluation of investment opportunities, and strategic analysis.[4]

37.    Despite lauding his experience in "government contracting," Diveroli was banned from government contracting for a 14-year period after defrauding the United States government

---

[3] *See* https://www.miamiherald.com/press-releases/article309462460.html
[4] *See* https://www.investdig.com/.

in connection with a $298 million contract with the United States Army to provide ammunition to Afghanistan.[5] *See Diveroli v. United States*, 803 F.3d 1258, 1260-62, 64 (11th Cir. 2015) (summarizing the fraud and affirming Diveroli's criminal conviction). DIG and its affiliates are accordingly just the latest vehicle through which Diveroli can enact his schemes to enrich himself through tortious conduct.

38.    One of DIG's affiliates is Defendant Kingbird, which ostensibly acts as an investment vehicle, but in fact operates to effectuate Diveroli's schemes.

39.    Diveroli's standard procedure, based on admissions from his business associate Bront Bird and seen in publicly accessible court filings,[6] is to find companies with directors and officers ("D&O") liability insurance that exceeds the value of the company. Diveroli then directs Kingbird to sue these entities and move to put them into receivership. Kingbird then seeks a settlement and windfall payout through the D&O insurance policies.

40.    Kingbird's recent shakedown of public company LQR House, Inc. (Nasdaq: YHC), as revealed through public filings and through the retelling from Bront Bird, an affiliate of Diveroli in several of his schemes, is instructive as to how Diveroli operates.

41.    To set up for an extractive settlement, Kingbird acquired a position in LQR House in mid-2025. The key acquisition occurred on June 27, 2025, when Kingbird's holdings exceeded 5% of the company, totaling 737,000 shares, or approximately 10.8% of LQR's outstanding stock. Two weeks later, on July 11, 2025, Kingbird sued LQR House, LQR House's officers, spouses of

---

[5] The story of this fraud was the subject of both a Rolling Stone article, *How Two Stoner Kids from Miami Beach Became Big-Time Arms Dealers—Until the Pentagon Turned on Them*, and a blockbuster Hollywood movie, *War Dogs*, starring Jonah Hill as Diveroli. *See* Guy Lawson, *How Two Stoner Kids from Miami Beach Became Big-Time Arms Dealers—Until the Pentagon Turned on Them*, Rolling Stone, Mar. 31, 2011, at 52; *War Dogs* (Warner Bros. 2016).

[6] *See, e.g.*, Kingbird's suit against LQR House Inc. *Kingbird Ventures, LLC v. Dollinger et al.*, No. A-25-922959-B (Nev. Dist. Ct. Clark Cnty.).

current and former officers, current and former directors, and twelve other named corporate entities associated with LQR or its officers and directors in Nevada state court.[7] Kingbird's complaint brought numerous claims, including breach of fiduciary duty, Nevada Securities Fraud, Nevada RICO violations, civil conspiracy, alter ego liability, declaratory judgment, and seeking appointment of a receiver.

42.    Part of Kingbird's modus operandi is using ancillary suits to bury a company and its officers in spurious litigation beyond just the derivative suit to add pressure. In this instance, Kingbird followed this suit up by suing LQR, its CEO, and a related entity in Florida, *Kingbird Ventures, LLC v. South Doll Limited Partnership*,[8] and LQR's CEO and his wife in British Columbia, *Kingbird Ventures, LLC v. Sean Dollinger*.[9]

43.    After various procedural motions, the trial court ordered appointment of a receiver. Although LQR House appealed, before the appeal was heard, the parties settled the dispute, with the defendants agreeing to pay $13 million to Kingbird. The settlement was contingent upon Kingbird also dismissing with prejudice its actions in Nevada, Florida, and British Columbia; withdrawing the receivership request; and cooperating to ensure no receiver is appointed based on the dismissed claims. Kingbird was also required to execute a proxy agreement, cooperate with approval of the separate derivative settlement, and enter a 10-year standstill agreement in which it would acquire no additional LQR securities, seek control, run proxy contests, or otherwise influence LQR's management or strategy.

---

[7] *Kingbird Ventures, LLC v. Sean Dollinger et al.*, No. A-25-922959-B (Nev. Dist. Ct. Clark Cnty.).

[8] Case No. 2025-013905-CA-01 (Fla. 11th Jud. Cir. Ct. Miami-Dade Cnty.).

[9] No. S-255543 (Can. B.C. Sup. Ct.).

### E.  Diveroli sets his sights on EVTV.

44.    Diveroli tried to repeat its litigation and extortion tactics with EVTV, which also has a large D&O insurance policy, but instead of handing Diveroli a check, EVTV chose to fight.

45.    Diveroli's interest in EVTV appears to stem from an unrelated deal between a Diveroli-affiliated company, Medlink, and Maddox Defense, a company controlled by EVTV's President, Jason Maddox, to produce medical gowns during the COVID-19 pandemic and thereafter for the United States government. After years of litigation, which included frivolous motions for restraining orders and fabricated claims that Jason Maddox was trying to murder Diveroli, the lawsuit was finally dismissed for failure to prosecute after Diveroli ceased paying his legal bills and stopped answering calls and emails from his lawyer. *See Medlink Health Solutions, LLC, v. Maddox Defense Inc.*, No. 22-cv-1306-BJC-DEB, ECF No. 150 (S.D. Cal. July 14, 2025).

46.    Aware that Maddox was the President of EVTV, Diveroli pivoted his attention from Maddox Defense to EVTV. Here, Diveroli pursued a two-pronged strategy: either ███ ████ to result in a quick (and unearned) payout for Diveroli personally or otherwise file a derivative suit through Kingbird against EVTV through which Diveroli and Kingbird could pursue a windfall settlement from EVTV's D&O policy.

47.    In EVTV's case, Diveroli would get his windfall payout through ██████ ████████████████████████████████████████████ ██ ████████████████████████████████████ he would be paid several million dollars.

48.    Diveroli first approached EVTV via an intermediary, Bront Bird. Bird is an entrepreneur and financier who founded Karla Mae Capital LLC, a Puerto Rico-based financial services firm. Although not directly affiliated with Kingbird, he has been working with Diveroli in various capacities since the COVID-19 pandemic, originally in connection with federal

contracts for the provision of medical gowns. He also has had past business dealings with Maddox Defense.

49.    On or about October 6, 2025, Bird provided EVTV with limited facts about ███ ████████████████████████████████████████████████████ Bird later revealed further details about the proposed deal and the name of the proposed partner, ████████████, as well as Diveroli's involvement, in a call to EVTV's COO on or around November 16, 2025.

50.    On the November 16th call, Bird delivered the first of many threats seeking to coerce EVTV into ████████████████████████ He framed his threat as "good news/bad news." The "good" news being that Bird would tell EVTV ████████████████ ████████████████, and the bad news being that Diveroli and his affiliates would sue EVTV into receivership ████████████████.

51.    ████████████  ████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████

52.    On November 20, 2025, Diveroli send a demand letter to EVTV threatening ███ ████████████; the implication being that if EVTV did not ████████████████, Diveroli would follow through with ████████████████.

53.    On December 4, 2025, Bird and Maddox spoke about ████████████ via video call.

54.    Acting in coordination with Diveroli, Bird tried to convince Maddox to ███ ██ ████████████ and delivered another of Diveroli's threats. This time Bird revealed that Diveroli

had come to him and explained his plan to ████████████████████████████████
████████████████ to force the company into receivership if EVTV refused ███████████
███████.

55.    Bird additionally told Maddox how Diveroli used Kingbird to extort companies into a quick settlement. He explained Diveroli's process of buying shares in companies, which revolved around Diveroli approaching leadership telling them they needed to propose or acquiesce to a deal for which Diveroli would bring in outside partners, *e.g.*, ████████████████████ ████████████
███. After the transaction had begun, Diveroli and his corporate affiliates would rapidly pursue ███████████████████████████████ against the unsuspecting company, seeking an extortionate settlement or a receivership through which Diveroli could extract the company's value for his own. Bird bragged that Diveroli has done this to 13 companies already, through various investment companies including Kingbird, and that he currently holds 11 such positions. Bird also specifically mentioned Kingbird's recent suit against LQR and the $13 million windfall payment that Diveroli had received. He revealed that Diveroli had been chasing Maddox since the *Medlink* case had been dismissed.

56.    Bird revealed that ██████████████████████████████████████████

57.    Acting as a supposed neutral, Bird offered to broker a deal between Diveroli, Kingbird, and other Diveroli-controlled entities, as applicable, with EVTV and any Maddox-affiliated companies. Bird's motivation was supposedly to ████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████ Throughout the call, Bird emphasized his and Diveroli's belief that ██████████████████████████████████████████

███████████████████████. Bird repeatedly stated that ████████████████████████

████████████████████████████████████████████████████.

**F. EVTV's board rejects** ████████████████████████

58.   ████████████████████ ████████████████████████████

████████████████████████ ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

59.   ████████████████, Maddox alerted the EVTV Board of Directors by email ██

████████████████████ ██████████████████████████████████

████████████████████████████████████████████████████████

████████████ ████████████████████████████ Maddox requested a special

meeting of the Board to review these issues. Ex. D.

60.   The EVTV Board refused to back down to Diveroli's threats and ████████

████████ ████████████████████████████████████████████████

██████████████████████████████.

61.   ████████████████████████████████████████████████

████████████████████████████████████████

**G. Kingbird Interferes with** ████████████████████

62.   On January 27, 2026, Diveroli and Kingbird began acting on their threats to use the

legal process to punish EVTV ████████████████████████████

63.   Kingbird retained Joel E. Tasca at Greenberg Traurig, LLP to send defamatory

letters to anyone affiliated with ████████████ ████████████ in the guise of a standard document

15

preservation letter. The Kingbird Notice and Demand Letter is attached here as Exhibit E. Yet, unlike with a standard preservation letter, the letters were deliberately not sent to the recipients' counsel, but instead to represented individuals directly.

64.    Also unlike a standard preservation letter, Kingbird used the Kingbird Notice and Demand Letter to make numerous false and defamatory statements about EVTV. These included false claims of ███████████████████████████████████████████████████████ ███████



Ex. E at 1.

65.    None of these accusations are true, and it is hard to imagine how either Tasca or Diveroli could have a good-faith basis for asserting them. EVTV has not ████████████ ████████████████████████████████ Likewise, the allegation that █████████████ ██████████████████████████████████████████████████████████████████ ████████ is categorically false.

66.    The Kingbird Notice and Demand Letter also explicitly referenced and incorporated the statements made in Kingbird's letter dated January 27, 2026, regarding the Demand for Inspection of Books and Records Pursuant to 8 Del. C. § 220 ("Books and Records Letter," attached hereto as Exhibit F).

67.    The Books and Records Letter included numerous additional false statements: █ ███████████████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████

68.    ████████████████████████████████ alerted Jason Maddox and

Elgin Tracy by email that ████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████

69.    In the end, Kingbird's attorney sent the letter to ██████████████

██████, without any legitimate reason to do so. And at all relevant times, ██████████████

████████████ were represented by their respective general counsel.

70.    Tasca also sent the Notice and Demand Letter to ██████████████████

██████████████████████████████

71.    ████████████████████████████████████████

████████████████████

72.    ████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████

73.     Kingbird published these statements to these and other third parties in order to make good on Diveroli's threat to Jason Maddox and EVTV ████████████████████████ ████ which would have earned Diveroli millions of dollars personally.

74.     By making these statements, Kingbird and Diveroli have interfered with EVTV's ████████████ as well as EVTV's ongoing relationship— ██████████████████ ███████████████████████████████████. Defendants' actions have already resulted in concrete injury to EVTV and, if their conduct is allowed to continue, could result in █████████████████ and ████████████████████ ████. Each of these negative outcomes ██████████████████

## CLAIMS FOR RELIEF

## COUNT I

### Tortious Interference with Contract

75.     Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs.

76.     EVTV has an agreement with ████████████ *See* Ex. A.

77.     ████████████ is a valid and enforceable contract. It is signed and creates binding obligations on both parties.

78.     Neither Kingbird nor Diveroli are parties to EVTV's contract ████████

79.     Kingbird and Diveroli are willfully and intentionally interfering with EVTV's contract ████████

80.     Kingbird and Diveroli know of the contract with ████ Kingbird and Diveroli are also aware of the material terms of ████████████████████ ████████████ Ex. B.

81.    Kingbird and Diveroli have intentionally interfered with the ███████████

contract by harassing and intimidating ████████████████████████████████████

████████████████████████████████████████████████████ all of which were

predicated on false statements that ████████████████████████████████████████

████████████████████████████ .

82.    Kingbird and Diveroli have no legitimate reason for sending their letters to ████

████████████████████████ , particularly when they and their attorneys know that

████████████████████ are represented by counsel. *See* Model Rules of Pro. Conduct R. 4.2

(A.B.A.).

## COUNT II

### Tortious Interference with Prospective Economic Advantage

83.    Plaintiff incorporates by reference the allegations set forth in the proceeding

paragraphs.

84.    EVTV is working to ███████████████████████████████████████████

██████████████████████████████████████████████████████████████

85.    EVTV had every reason to believe ████████████████████████████████

86.    At all relevant times, Kingbird and Diveroli knew of this relationship, ██████

██████████████████████████████████████████████████████████████

████████████████████████████ . They are also aware of the material terms of ██████

████████████████████████████████████████████ Ex. B.

87.    Defendants intentionally engaged in wrongful conduct that disrupted

EVTV's economic relationship with ██████████ Through extensive ████████████

██████████████████████████████████████████████████████████████

██████████ communicated through their agent, the Greenberg Traurig attorney Joel Tasca,

Defendants have threatened

19

████████████████████████████████████████████████████████
███████████████████████████. Defendants intend to ████████████████████████████
██████████████████████████████████████████████.

88.    Defendants' false, malicious, and disparaging statements were independently tortious, as they constitute, at a minimum, defamation under Texas law.

89.    Defendants acted with the intent to disrupt these ongoing, beneficial business relationships.

90.    EVTV was harmed as a result of Defendants' actions: ███████████████████████
████.

91.    Defendants' actions were a substantial factor in causing this harm, as without Defendants' harassing, tortious, and defamatory conduct, ████████████████████████
██████████████████████████████.

92.    Defendants' conduct described herein is the proximate cause of the ongoing injury to EVTV because, at minimum, Defendants knowingly and intentionally took actions to discourage ██████████████████████████████████████████████████
████████████████ And EVTV continues to be injured by, at a minimum, incurring significant burden and expense to combat Defendants' actions in order to █████████████████████
██████████████████████████████████████████, and by incurring the significant legal and financial burden of combatting Defendants' wrongful actions.

## COUNT III

### Defamation and Business Disparagement

93.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

20

94.    Defendants made false and disparaging statements through their agent Tasca to

███████████████████████ that EVTV's Officers were self-dealing and guilty of insider

trading. Defendants stated that:



Ex. E at 1.

95.    Defendants made these statements as statements of fact, not opinion. A reasonable

reader would, in context, construe ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████

96.    Defendants intentionally made these statements with actual malice. Defendants

made them either knowing that they were false or without regard to their falsity because they were

made as part of an effort by Defendants to interfere with ████████████████████

Defendants either subjectively intended to make false statements regarding ████████████

█████████████ or were recklessly indifferent to the truth of the statements.

97.    Defendants made these defamatory statements without any legally recognized

privilege entitling them to do so.

98.    Under Texas law, Defendants' statements ████████████████████████

███████████████████████████ are defamation per se, and do not require

proof of damages. *See Levine v. Steve Scharn Custom Homes, Inc.*, 448 S.W.3d 637, 650 (Tex.

App.—Houston [1st Dist.] 2014, pet. denied) ("[A] statement is defamatory per se only if it falls within one of the following categories: (1) imputation of a crime; (2) imputation of a loathsome disease; (3) injury to a person's office, business, profession, or calling; or (4) imputation of sexual misconduct." (quoting *Memon v. Shaikh*, 401 S.W.3d 407, 421 (Tex. App.—Houston [14th Dist.] 2013, no pet.))).

99.     Notwithstanding the characterization of Defendants' defamatory statements, EVTV has suffered and will continue to suffer financial harm as a result of Defendants' defamatory statements. Defendants' statements have ████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████, which will result in EVTV suffering significant injury.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

100.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

101.     The allegations set forth in this Original Petition and Request for Temporary Restraining Order and Temporary Injunction are supported by the verification of Elgin Tracy, Chief Operating Officer of EVTV, and incorporated exhibits.

102.     "The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Tex. Health & Human Servs. Comm'n v. Advocs. for Patient Access, Inc.*, 399 S.W.3d 615, 629 (Tex. App.—Austin 2013, no pet.). An application for a temporary restraining order and temporary injunction must include: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204

(Tex. 2002). "The applicant is not required to establish that he will prevail on final trial; rather, the only question before the trial court is whether the applicant is entitled to preservation of the status quo pending trial on the merits." *Advocs. for Patient Access, Inc.*, 399 S.W.3d at 629.

103.    These requirements are readily met here, and a temporary restraining order is urgently needed to preserve the status quo.

### A. Plaintiff has a probable right of recovery for tortious interference with contract.

104.    EVTV has a probable right to recovery on its claim for tortious interference with existing contract. To prove this claim, EVTV must show: "(1) the existence of a contract subject to interference, (2) an act of interference that was willful and intentional, (3) the act was a proximate cause of the plaintiff's damage, and (4) actual damage or loss occurred." *Cmty Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017). EVTV has met its burden.

### i.    The existence of a contract subject to interference.

105.    The existence of the contract between EVTV and ██████ is not in doubt. *See* Ex. A. ███████████ is signed and creates binding obligations on both parties. *Id.* It reflects a meeting of the minds between EVTV and ██████ This contract is in force and subject to interference. *See, e.g.*, *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 664 (Tex. 1990) ("The first element requires the existence of a valid contract."); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 689 (Tex. 1989) ("[T]erminable-at-will status of a contract is no defense to an action for tortious interference with its performance.").

106.    Likewise, EVTV and ████████████████████████████████ ████████████████████████████.

### ii.    Act of interference that was willful and intentional.

107.    Kingbird, as a shareholder in EVTV, and Diveroli through Kingbird, knew of EVTV's contractual relationship with ██████ Defendants were also aware of ████████

████████████████████████████████ *E.g.* Ex. B. Defendants were fully aware

of EVTV's relationship with ████████████████████████████████████

Defendants knew that █████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████ *See Steinmetz & Assocs., Inc. v. Crow*, 700 S.W.2d 276, 277–78 (Tex.

App.—San Antonio 1985, writ ref'd n.r.e.) ("[T]he interferer had actual knowledge of the contract

or business relation in question, or knowledge of facts and circumstances that would lead a

reasonable person to believe in the existence of the contract.").

108.    Defendants' baseless accusations reflect their intent to tortiously interfere with

EVTV's contract with ██████ EVTV need not establish with direct evidence that the interference

was willful and intentional, though such evidence exists; circumstantial evidence can be used to

meet this element. *Dagley v. Haag Eng'g Co.*, 18 S.W.3d 787, 794 (Tex. App.—Houston [14th

Dist.] 2000, no pet.) ("Because a defendant accused of tortious interference rarely admits his guilt,

a plaintiff must prove his cause of action with circumstantial evidence."); *accord Fan Expo, LLC

v. Nat'l Football League*, 2019 WL 2211084, at *4 (Tex. App.—Dallas May 22, 2019, pet. denied).

Circumstantial evidence need not be conclusive but instead "need only point to ultimate facts

sought to be established with such a degree of certainty as to make the conclusion reasonably

probable." *Dagley*, 18 S.W.3d at 794.

109.    Defendants, looking to harm EVTV economically if EVTV did not agree to ██

█████████████████████ acted with either a conscious desire to disrupt ████████████

██████ or knew that such a result was certain or substantially certain to result from their conduct.

Having been spurned by EVTV's board ███████████████████████████████████

████████████████████████████████████████████.

██

### iii.    The act was a proximate cause of the plaintiff's damage.

110.    "A defendant's interfering conduct need only be a proximate cause of the harm to plaintiff for there to be liability." *Strickland v. Joeris*, 2012 WL 6013423, at \*5 (Tex. App.—San Antonio Nov. 30, 2012, no pet.).

111.    The Kingbird Notice and Demand Letter, sent to anyone affiliated with the EVTV and ███████████ drew immediate attention at ██████████████████████. ██████████ CEO of ██████ immediately alerted Jason Maddox at EVTV of the Letter and ████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████ *See supra*, ¶¶ 61–68.

112.    The Letter had the same harassing effect at ████████████, which advised EVTV after receipt of defamatory letter that ██████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████ *See supra*, ¶¶ 69–73.

113.    Defendants' actions directing the Kingbird Notice and Demand Letter to be sent to individuals who they knew were represented by counsel and containing numerous defamatory statements satisfies this requirement.

### iv.    Actual damage or loss occurred and is imminently likely to occur.

114.    The overall value of the ████████████████████████



███████████████████████████████████████████████████

███████████████████████████████████████████    *See Graham v. Mary Kay Inc.*, 25

S.W.3d 749, 753 (Tex. App.—Houston [14th Dist. 2000, pet. denied) (for tortious interference

claim "under Texas law, actual damage is not required. An injunction may be granted when the

employer can provide proof of 'probable injury'"); *Exxon Corp. v. Allsup*, 808 S.W.2d 648, at 660

(Tex. App.—Corpus Christi–Edinburg 1991, writ denied) (plaintiff may also recover

"consequential losses for which the interference is the legal cause").

115.    Accordingly, EVTV has a probable right to recovery on its tortious interference

with contract claim.

**B.    Plaintiff has a probable right of recovery for tortious interference with prospective economic advantage.**

116.    EVTV likewise has a probable right to recovery on its claim for tortious

interference with prospective economic advantage. To prove this claim, EVTV must show:

"(1) there was a reasonable probability that the plaintiff would have entered into a business

relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the

relationship from occurring or knew the interference was certain or substantially certain to occur

as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful;

(4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual

damage or loss as a result." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909,

923 (Tex. 2013). EVTV has met its burden.

**i.    There was a reasonable probability that the plaintiff would have entered into a business relationship with a third party.**

117.    EVTV and ████████████████████████████████████████████

████████    Prior to Defendants' harassment campaign, █████████████████████████████

Based on the ████████████ EVTV had every reason to believe ████████████████████████

26

     ii.     ***Defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct.***

118.    Defendants knew of the ███████████ *See supra*, ¶ 104.

119.    Defendants, looking to harm EVTV economically if EVTV did not agree to ██ ████████████████████████, acted with either a conscious desire to disrupt ████████ ███████ or knew that such a result was certain or substantially certain to result from their conduct. EVTV need not establish with direct evidence that the interference was willful and intentional, though such evidence exists; circumstantial evidence can be used to meet this element. *Dagley*, 18 S.W.3d at 794 ("Because a defendant accused of tortious interference rarely admits his guilt, a plaintiff must prove his cause of action with circumstantial evidence."); *accord Fan Expo*, 2019 WL 2211084, at *4. Circumstantial evidence need not be conclusive but instead "need only point to ultimate facts sought to be established with such a degree of certainty as to make the conclusion reasonably probable." *Dagley*, 18 S.W.3d at 794. Defendants' actions targeting EVTV ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████.

120.    Defendants' defamatory accusations—sent to ███████████████ █████████████████████████████—reflect their intent to tortiously interfere with EVTV's prospective economic advantage ███████ There is no credible or non-nefarious explanation for why the Kingbird Notice and Demand Letter with its inflammatory statements ██████████████████████████████████. The natural and wholly foreseeable result of Kingbird's statements █████████████████████████ ███████████████████████was entirely predictable. No other explanation sufficiently explains Defendants' conduct in ████████████████████



### iii.    *Defendants' conduct was independently tortious or unlawful.*

121.    Defendants engaged in wrongful conduct that disrupted EVTV's ███████ ████████████████████. That conduct took the form of false and defamatory statements to ████████████████, among others, that ████████████ ████████████████████. That conduct also included attempts by Kingbird, acting through Bird, at shaking down EVTV by ████████████ ████████████████████.

122.    This conduct was independently tortious or unlawful as defamation, which is a recognized tort in the State of Texas. *Levine*, 448 S.W.3d at 650; *see Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001) ("By independently tortious we do not mean that the plaintiff must be able to prove an independent tort. Rather, we mean only that the plaintiff must prove that the defendant's conduct would be actionable under a recognized tort.").

123.    Defamation is actionable under Texas law if the plaintiff presents clear and convincing evidence that "(1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages (unless the statement constitutes defamation per se)." *Whitelock v. Stewart*, 661 S.W.3d 583 (Tex. App.—El Paso 2023, pet. denied) (quoting *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017)).

124.    Defendants made false and disparaging statements through their agent Tasca to ████████████████████████████████████████ ██████ *See supra*, ¶ 93. Defendants made these statements as statements of fact, not opinion.

125.    These statements were defamatory per se because ████████████████
████████████████████████████████████████. *See Levine.*, 448 S.W.3d at 650

("A statement is defamatory per se when the statements . . . are so obviously hurtful to a plaintiff's

reputation that the jury may presume general damages." (quotation marks and citations omitted)).

█████████████████████████████████████████████████████.

126.    Defendants made these statements with the intent to cause harm to EVTV. There is

no reasonable or benign explanation for Defendants' conduct in sending the Kingbird Notice and

Demand Letter to the aforementioned recipients. *See supra*, ¶ 116.

127.    Damages for defamatory per se statements do not require proof of damages;

damages for statements ████████████████████████████████████████████

████████████████ *Levine*, 448 S.W.3d at 650.

128.    Defendants' conduct is also independently unlawful as ████████ under Texas or

federal law. ██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████

129.    ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

130.    Here Diveroli and Kingbird acted in concert to ████████████████████

█████████. Defendants threatened to ████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████. This threat

was conveyed through Bird to Jason Maddox. Then when EVTV did not ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████

iv.    *Interference proximately caused the plaintiff injury.*

131.    Defendants' actions were a substantial factor in causing ████████  ████████████

███████████████████████████████████████████████  Prior to

Defendants' actions, ███████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████

132. Defendants' actions were also a substantial factor in [redacted]

133. But for Defendants' actions, [redacted] "A defendant's interfering conduct need only be a proximate cause of the harm to plaintiff for there to be liability." *Strickland*, 2012 WL 6013423, at *5. Defendants' defamatory statements satisfy this requirement.

***v. Plaintiff suffered actual damage or loss as a result.***

134. The overall value of [redacted]. *See Graham*, 25 S.W.3d at 753 (for tortious interference claim "under Texas law, actual damage is not required. An injunction may be granted when the employer can provide proof of 'probable injury.'"); *Exxon Corp.*, 808 S.W.2d at 660 (may also recover "consequential losses for which the interference is the legal cause.").

135. Moreover, Plaintiff is suffering presumed damages as a result of the defamation per se from Defendants. Defendants published false and disparaging statements to [redacted] Under Texas law, Defendants' statements falsely accusing [redacted] and do not require proof of damages. *See Levine*, 448 S.W.3d at 650 ("A statement is defamatory per se when the statements . . . are so obviously hurtful

to a plaintiff's reputation that the jury may presume general damages." (international quotation marks and citation omitted)).

136.    Accordingly, EVTV has a probable right to recovery on its tortious interference with prospective economic advantage claim.

### C.  *Plaintiff will suffer a probable, imminent, and irreparable injury in the interim.*

137.    EVTV has also met its burden to show it will suffer immediate, irreparable harm unless Defendants' ongoing tortious conduct is enjoined. "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by a certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204. Harm is considered imminent "by showing that the defendant will engage in the activity sought to be enjoined. *Schmidt v. Richardson*, 420 S.W.3d 442, 447 (Tex. App.—Dallas 2014, no pet.).

138.    Defendants' actions are actively interfering with and disrupting EVTV's business, which includes not just the █████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
███████████. "Business disruptions" are "the very type of harm for which a temporary injunction can issue." *Liberty Mut. Ins. Co. v. Mustang Tractor & Equip. Co*., 812 S.W.2d 663, 666 (Tex. App.—Houston [14th Dist.] 1991, no writ); *accord SBI Invs., LLC v. Quantum Materials Corp*., 2018 WL 1191854, at *6 (Tex. App.—Austin Mar. 8, 2018, no pet.).

139.    By its language and wide distribution, Defendants' Notice and Demand Letter targeted EVTV's ongoing business operations. "Moreover, a trial court may grant injunctive relief when the enjoined conduct threatens to disrupt an ongoing business." *Sonwalkar v. St. Luke's Sugar Land P'ship, L.L.P.*, 394 S.W.3d 186, 199 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *see also Frequent Flyer Depot, Inc. v. Am. Airlines, Inc*., 281 S.W.3d 215, 228 (Tex. App.—Fort

Worth 2009, pet. denied) ("Disruption to a business can be irreparable harm."). Loss of business relationships and goodwill is not reducible to money damages. *David v. Bache Halsey Stuart Shields, Inc.*, 630 S.W.2d 754, 757 (Tex. App.—Houston [1st Dist.] 1982, no writ) ("One cannot assign a dollar value to a company's loss of clientele, good will, office stability, commission schedules, marketing techniques, and investment strategies."). ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

140.    Defendants' conduct is susceptible to injunctive relief because it includes "speech in a commercial context that cause[s] deception and confusion." *Amalgamated Acme Affiliates, Inc. v. Minton*, 33 S.W.3d 387, 395 (Tex. App.—Austin 2000, no pet.). False and deceptive commercial speech—like ████████████████████████████████████████

████—is not constitutionally protected because it was ████████████████████████

████████████████████████████████████████████ courts distinguish such deceptive and confusing commercial speech from constitutionally protected speech because such communications are "solely of personal interest." *Id.* at 395 & n.4 (quoting *Jones v. Memorial Hosp. Sys.,* 677 S.W.2d 221, 224 (Tex. App.—Houston [1st Dist.] 1984, no writ)); *see also Karamchandani v. Ground Tech., Inc.,* 678 S.W.2d 580, 582 (Tex. App.—Houston [14th Dist.] 1984, writ dism'd w.o.j.) (granting injunction "to prevent harm from private communications, and to preserve the status quo" where "[t]he communication was to specific individuals with the intention of coercing them to discontinue business with [the plaintiff]").

141.    ███████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████

142.    If Defendants' tortious conduct is allowed to continue, ████████████████

██████████████████████████████████████████

████████████████. If this comes to pass, ██████████████████████

████████████████████████████████ and thus, it is vital that

Defendants are forced to stop their tortious conduct.

### D. The requested relief preserves the status quo.

143.    Moreover, this emergency relief is necessary to preserve the status quo. Status quo is defined as "the last, actual, peaceable, non-contested status that preceded the pending controversy." *Surko Enters, Inc. v. Borg-Warner Acceptance Corp.*, 782 S.W.2d 223, 224 (Tex. App.—Houston [1st Dist.] 1989, no writ) (quoting *State v. Sw. Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975)). "The status quo cannot be a violation of the law." *Pharaoh Oil & Gas, Inc. v. Ranchero Esperanza, Ltd.*, 343 S.W.3d 875, 882 (Tex. App.—El Paso 2011, no pet.).

144.    Here, the last peaceable, non-contested status between the parties was the time preceding Defendants' attempts to shake down EVTV with ████████████████████

████████████████████████. The last peaceable, non-contested status between the parties was also before Defendants directed Tasca to send harassing and abusive Notice and Demand Letters to ████████████████████████

███████████████. Although damage has already been done to these relationships, it is not too late to preserve the status quo ante.

145.    Because the "status quo cannot be a violation of the law," *Pharaoh Oil & Gas, Inc.*, 343 S.W.3d at 882, the court would necessarily need to enjoin Defendants' conduct that is in violation of the law, *i.e.*, its tortious actions serving as the factual basis for EVTV's tortious-interference claims. As such, the status quo will be preserved by enjoining Defendants from further false and deceptive communication ██████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████

146.    EVTV requests the Court fix the statutory bond amount, not to exceed $335,000, which is the approximate current market value of Kingbird's shares in EVTV, pending a temporary injunction hearing in this matter. TEX. R. CIV. P. 684. "The purpose of the bond is to secure payment to the party against whom the injunction is granted in the amount of damages that party would suffer if the injunction is subsequently dissolved." *Biodynamics, Inc. v. Guest*, 817 S.W.2d 128, 131 (Tex. App.—Houston [14th Dist.] 1991, writ dism'd by agr.). Because Defendants are the parties against whom the injunction would be granted, the inquiry is the amount of damages Defendants might suffer. Because $335,000 is approximately the amount of Defendants' economic interest in EVTV, it represents the upper end of the risk of damages from an erroneous injunction against Defendants' and therefore an appropriate bond should be no greater than $335,000.

## PRAYER

Plaintiff asks this Court to grant this request for temporary restraining order and injunction to prevent immediate, irreparable harm and to preserve the status quo. Plaintiff prays the Court enter the following relief:

a. A Temporary Restraining Order and injunction preventing Defendants from further contacting EVTV's business partners or their employees, including but not limited to ████████████████████████████;

b. A Temporary Restraining Order and injunction preventing Defendants from instituting litigation against EVTV or its business partners, including ████████████████ ████████████;

c. A hearing on Plaintiff's request for a temporary injunction;

d. All available damages, including but not limited to actual, economic, indirect, consequential, exemplary, compensatory, punitive, and special damages;

e. All costs and attorneys' fees; and

f. Any such other and further relief, general or special, at law or in equity, to which Plaintiff may be justly entitled.

Dated: February 5, 2026

Respectfully submitted,

*/s/ Christopher D. Hilton*

Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Alexander M. Dvorscak
Texas Bar No. 24120461
David C. Finkel
Texas Bar No. 24125230
**STONE HILTON PLLC**
600 Congress Ave., Suite 2350
Austin, TX 78701
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
alex@stonehilton.com
dave@stonehilton.com

*Counsel for Plaintiff*

CAUSE NO. 26-BC11B-0007

| | |
|---|---|
| ENVIROTECH VEHICLES, INC., *Plaintiff*, | THE BUSINESS COURT OF TEXAS |
| v. | ELEVENTH DIVISION |
| KINGBIRD VENTURES LLC and EFRAIM DIVEROLI, *Defendants*. | HARRIS COUNTY, TEXAS |

## <u>VERIFICATION BY ELGIN TRACY</u>

1. My name is Elgin Tracy. I am over 18 years of age, of sound mind, and capable of making this affidavit.

2. I am employed as the Chief Operating Officer of Envirotech Vehicles, Inc. ("EVTV").

3. The facts stated in this above-captioned original petition and application for temporary injunctive relief ("Petition") are within my personal knowledge and are true and correct.

4. The following exhibits are incorporated by reference. The exhibits attached are true and correct copies:

| Exhibit | Description |
|---|---|
| Exhibit A | ██████████ |
| Exhibit B | ████████████ |
| Exhibit C | █████████ |
| Exhibit D | Email to Board of Directors |
| Exhibit E | Kingbird Notice and Demand Letter |
| Exhibit F | Demand for Books and Records |

I declare under the penalty of perjury that the facts stated in this Petition are true and correct.

Executed in Harris County, State of Texas on the 5rd day of February, 2026.

Signed by:
Elgin Tracy
Elgin Tracy

CAUSE NO. <u>26-BC11B-0007</u>

| | |
|---|---|
| ENVIROTECH VEHICLES, INC., *Plaintiff,* | THE BUSINESS COURT OF TEXAS |
| v. | ELEVENTH DIVISION |
| KINGBIRD VENTURES LLC and EFRAIM DIVEROLI, *Defendants.* | HARRIS COUNTY, TEXAS |

**EXHIBITS**

| EXHIBITS | DOCUMENT | PAGE |
|---|---|---|
| EXHIBIT A | ███████████████ | 40 |
| EXHIBIT B | █████████ | 51 |
| EXHIBIT C | █████████ | 56 |
| EXHIBIT D | Email to Directors | 68 |
| EXHIBIT E | Kingbird Notice and Demand Letter ████ | 72 |
| EXHIBIT F | Demand for Books and Records | 79 |

# EXHIBIT A

# EXHIBIT B

# EXHIBIT C

# EXHIBIT D

# EXHIBIT E

# EXHIBIT F

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Maria Mendoza-Williamson on behalf of Christopher Hilton
Bar No. 24087727
maria@stonehilton.com
Envelope ID: 110920262
Filing Code Description: No Fee Documents
Filing Description: (REDACTED) Plaintiffs Verified Original Petition and Request for Temporary Restraining Order and Temporary Injunction
Status as of 2/5/2026 4:35 PM CST

Associated Case Party: Envirotech Vehicles, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Christopher Hilton | | chris@stonehilton.com | 2/5/2026 4:15:52 PM | SENT |
| Judd Stone | | Judd@stonehilton.com | 2/5/2026 4:15:52 PM | SENT |
| Bonnie Chester | | bonnie@stonehilton.com | 2/5/2026 4:15:52 PM | SENT |
| Alexander Dvorscak | | alex@stonehilton.com | 2/5/2026 4:15:52 PM | SENT |
| Rosalinda Luna | | rosie@stonehilton.com | 2/5/2026 4:15:52 PM | SENT |
| Maria Mendoza | | maria@stonehilton.com | 2/5/2026 4:15:52 PM | SENT |
| David Finkel | | dave@stonehilton.com | 2/5/2026 4:15:52 PM | SENT |

# EXHIBIT B-2

CAUSE NO. <u>26-BC11B-0007</u>

| | |
|---|---|
| ENVIROTECH VEHICLES, INC., <br> *Plaintiff*, | THE BUSINESS COURT OF TEXAS |
| v. | ELEVENTH DIVISION |
| KINGBIRD VENTURES LLC and <br> EFRAIM DIVEROLI <br> *Defendants*. | HARRIS COUNTY, TEXAS |

**[PROPOSED] TEMPORARY RESTRAINING ORDER AND
ORDER SETTING HEARING FOR TEMPORARY INJUNCTION**

On this day, the Court considered Plaintiff Envirotech Vehicles, Inc. ("EVTV") Application for Temporary Restraining Order, the verified pleadings, and any arguments of counsel. The Court GRANTS the Application.

Having considered the foregoing, the Court finds EVTV is entitled to temporary relief and there is evidence that immediate and irreparable injury, loss, or damage will result to Plaintiff if the Court does not issue the temporary restraining order.

The Court makes the following findings pursuant to Chapter 65.011 of the Civil Practices and Remedies Code:

1. EVTV filed the Application complaining of the actions of Defendants.

2. The Petition was verified by declarations in accordance with Tex. R. Civ. P. 680.

3. EVTV provided notice of the Application to representatives of Defendants Kingbird Ventures LLC and Efraim Diveroli.

4. EVTV has demonstrated that it has properly pleaded causes of action for tortious interference with contract and tortious interference with prospective economic advantage.

5. EVTV has demonstrated a probable right to relief on its claim for tortious interference

with contract. EVTV has demonstrated that Defendants were aware of the existence of the contract between EVTV and ███████ identified in Exhibit A of the Verified Petition that was subject to interference. The interference by Defendants was willful and intentional. Further, EVTV has demonstrated that it will suffer actual harm, that the harm will be proximally caused by Defendants' conduct, and the harm will continue if Defendants are not enjoined.

6. EVTV has demonstrated a probable right to relief on its claim for tortious interference with prospective economic advantage. There was a reasonable probability that ███████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ To this end, Defendants also intentionally interfered with ███████████████████ ████████████████████████████████████████████████████████████ Defendants' conduct is independently tortious and unlawful, ████████████████ ███████████████. Further, Defendants' conduct proximately caused or will cause EVTV to suffer actual damages ████████████████████████████████████ ████████████████████████████████.

7. EVTV has demonstrated probable, imminent, and irreparable injury absent injunctive relief prior to a temporary injunction hearing.

8. EVTV has demonstrated that Defendants' tortious interference has threatened to disrupt EVTV's ████████████████████████████████████████████████ ████████████████████ Both disruptions would have a serious and existential impact on EVTV as a going concern.

9. The purpose of a temporary restraining order is to preserve the status quo. The status

quo is the last, actual, peaceable, non-contested status which preceded the pending controversy. Here, the last peaceable, non-contested status between the parties was the time preceding Defendants' attempted shakedown of EVTV ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████

10. Therefore, issuance of a temporary restraining order is appropriate here.

**It is therefore ORDERED that Defendants Kingbird Ventures LLC and Efraim Diveroli are hereby temporarily restrained**:

    a.   Defendants are restrained from further contacting EVTV's business partners or their employees, including but not limited to ████████████████████████; and

    b.   Defendants are restrained from instituting litigation against EVTV or its business partners, including ████████████████

Actual notice of this Temporary Restraining Order shall be made by personal service in accordance with the Texas Rules of Civil Procedure. This Order is binding upon the Defendants and all their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

IT IS FURTHER ORDERED that this Temporary Restraining Order shall expire at 11:59 p.m. on February _____, 2026, which is no more than fourteen days from the date of this Order, unless extended for good cause shown.

IT IS FURTHER ORDERED that Plaintiff's Application for Temporary Injunction be

heard before the Business Court of Texas, Eleventh Division, Harris County, Texas, on February

_____, 2026 at _____ a.m./p.m.

The clerk of the above-entitled Court shall forthwith, on the filing by Plaintiff of the required bond, and on approving the same according to the law, issue a writ of injunction in conformity with the law and the terms of the order.

The Order shall not be effective unless and until Plaintiff executes and files with the clerk a bond, in conformance with the law, in the amount of $_____. Plaintiff may post a cash deposit in lieu of a bond under Texas Rule of Civil Procedure 14(c).

This Order has been filed in the Clerk's office and entered in the record.

SIGNED and ENTERED on _____.


_____
Honorable Judge Presiding

4

# EXHIBIT B-3

E-filed in the Office of the Clerk
for the Business Court of Texas
2/5/2026 4:06 PM
Accepted by: Alexis Jennings
Case Number: 26-BC11B-0007

CAUSE NO. <u>26-BC11B-0007</u>

| | |
|---|---|
| ENVIROTECH VEHICLES, INC., <br> *Plaintiff*, | THE BUSINESS COURT OF TEXAS |
| v. | ELEVENTH DIVISION |
| KINGBIRD VENTURES LLC and <br> EFRAIM DIVEROLI, <br> *Defendants*. | HARRIS COUNTY, TEXAS |

## PLAINTIFF ENVIROTECH VEHICLES, INC.'S VERIFIED MOTION FOR TEMPORARY AND PERMANENT SEALING ORDER

Plaintiff Envirotech Vehicles, Inc. ("EVTV"), pursuant to Tex. R. Civ. P. 76a, respectfully requests this Court temporarily seal Plaintiff's Verified Original Petition and Request for Temporary Restraining Order and Temporary Injunction ("Original Petition") and Exhibits A–F, and after the required notice and public hearing, enter an order permanently sealing same. Plaintiff's Original Petition and Exhibits A–F contain confidential, privileged information that will cause immediate and irreparable injury if not immediately sealed.

## LEGAL AUTHORITY

Under Texas Rule of Civil Procedure 76(a)(5), a court may issue an order temporarily sealing court records until a hearing on a motion to permanently seal records can be held upon motion and notice to any parties who have answered in the case. Specifically, Texas Rule of Civil Procedure 76(a) permits a court to temporarily seal court records if a party can show a compelling need from specific facts shown in a verified motion that immediate and irreparable injury will result to an interested party before a hearing is held on a motion to permanently seal. Tex. R. Civ. P. 76a(5). The temporary order must also include the time for the public hearing and direct the movant to immediately post and file notice of the hearing as required by Rule 76a. *Id.*

Under Texas Rule of Civil Procedure 76a, the presumption of openness of court records can be overcome and records permanently sealed if the party seeking to seal the records establishes that (1) a specific, serious, and substantial interest clearly outweighs the court records' presumption of openness and any probable adverse effect that sealing will have upon the general public health or safety; and (2) no less restrictive means than sealing records will adequately and effectively protect the specific interest asserted. When considering whether court records should be sealed, the public's interest in open court proceedings should be balanced against a party's personal or proprietary interest in privacy. *Gen. Tire, Inc. v. Kepple*, 970 S.W.2d 520, 526 (Tex. 1998).

## ARGUMENT

Plaintiff has met its burden under both Rule 76(a)(5) and Rule 76(a)(1). Plaintiff's Original Petition and Exhibits discuss sensitive and confidential information related to interference with a transaction involving a publicly held company that would risk serious injury to Plaintiff, its counterparty, public shareholders, and other non-parties if it became publicly available. The resulting harm of disclosure would be immediate and could not be adequately remedied by monetary damages. Put otherwise, disclosure of the confidential information Plaintiff seeks to protect through this motion relates to the present and ongoing interference which, if publicly known, would effectuate the harm sought by Defendants and against which Plaintiff seeks injunctive relief. Plaintiff also notes that it has contractual confidentiality obligations implicated by public disclosures relating to the transaction at the heart of the dispute and that otherwise prevent disclosure of Exhibit A. Preventing this irreparable harm to Plaintiff and non-parties is a specific, serious, and substantial interest that clearly outweighs the presumption of openness, and sealing these records will not have an adverse effect on public health or safety. *See In re Browning-Ferris Indus., Inc.*, 267 S.W.3d 508, 512 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see also*

2

*Dall. Morning News v. Fifth Court of Appeals*, 842 S.W.2d 655, 659 (Tex. 1992). Sealing the Original Petition and Exhibits will not harm the public and will benefit both Plaintiff and non-parties. Plaintiff is contemporaneously filing a Petition redacting the confidential information and the public may still ascertain the underlying issues raised in the suit by referring to the redacted Petition, without need for review of the unredacted Original Petition.

No less restrictive means will adequately and effectively protect the specific interest asserted. Plaintiff will promptly comply with Rule 76a(3) and post public notice at the place where notices for meetings of county governmental bodies are required to be posted. Tex. R. Civ. P. 76a(3). The notice will state that a hearing will be held in open court on this motion; any person may intervene and be heard concerning the sealing of court records; the specific time and place of the hearing; the style and number of the case; a brief but specific description of the nature of the case and the records which are sought to be sealed; and the identity of the movant. *Id*. Immediately after posting such notice, Plaintiff will file a verified copy of the posted notice with the Texas Business Court Clerk and the Clerk of the Supreme Court of Texas.

This motion is not made for delay or harassment but only so that justice may be done and the confidentiality interests of the parties, and non-parties may be preserved and maintained.

Plaintiff has met its burden to provide a serious, specific, and substantial interest in sealing the record that clearly outweighs the presumption of openness and any probable adverse effect that the sealing will have on the general public health and safety. Temporary sealing is necessary here to prevent irreparable harm to Plaintiff and non-parties. Plaintiff respectfully requests that Plaintiff's Original Petition and Exhibits be temporarily sealed, and upon notice and hearing, permanently sealed.

## PRAYER FOR RELIEF

For these reasons, Plaintiff respectfully requests this Court to do the following:

a.  Immediately sign a temporary order sealing Plaintiff's Original Petition and Exhibits A–F as described above and instructing the Clerk of Court of the Texas Business Court to place those records under seal.

b.  Set the time and place for a hearing on Plaintiff's Motion for Permanent Sealing Order.

c.  After the hearing, seal the documents described above permanently.

d.  Grant such further relief as the Court may find in the interest of justice.

Dated: February 5, 2026

Respectfully submitted,

*/s/ Christopher D. Hilton*

Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Alexander M. Dvorscak
Texas Bar No. 24120461
David C. Finkel
Texas Bar No. 24125230
STONE HILTON PLLC
600 Congress Ave., Suite 2350
Austin, TX 78701
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
alex@stonehilton.com
dave@stonehilton.com

*Counsel for Plaintiff*

CAUSE NO. <u>26-BC11B-0007</u>

| | |
|---|---|
| ENVIROTECH VEHICLES, INC.,<br>*Plaintiff*, | THE BUSINESS COURT OF TEXAS |
| v. | ELEVENTH DIVISION |
| KINGBIRD VENTURES LLC and<br>EFRAIM DIVEROLI,<br>            *Defendants*. | HARRIS COUNTY, TEXAS |

## <u>VERIFICATION BY ELGIN TRACY</u>

1.      My name is Elgin Tracy. I am over 18 years of age, of sound mind, and capable of making this declaration.

2.      I am employed as the Chief Operating Officer of Plaintiff Envirotech Vehicles, Inc.

3.      I have read Plaintiff's Verified Motion for Temporary and Permanent Sealing Order ("Motion"). I have personal knowledge of all statements contained in the Motion and the facts that form the basis for temporarily sealing the Original Petition and Exhibits A–F are true and correct.

4.      There is a compelling need to temporarily maintain the confidentiality of the Original Petition and Exhibits A–F for the reasons set out in the Motion.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed in Harris County, State of Texas on the 5th day of February, 2026

<div style="text-align:right;">
Signed by:<br>
*Elgin Tracy*<br>
DC7FE7EAD0B847A...<br>
Elgin Tracy
</div>

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Maria Mendoza-Williamson on behalf of Christopher Hilton
Bar No. 24087727
maria@stonehilton.com
Envelope ID: 110919362
Filing Code Description: Motions - All Other
Filing Description: Plaintiffs Verified Motion for Temporary and Permanent
Sealing Order
Status as of 2/5/2026 4:19 PM CST

Associated Case Party: Envirotech Vehicles, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Christopher Hilton | | chris@stonehilton.com | 2/5/2026 4:06:43 PM | SENT |
| Judd Stone | | Judd@stonehilton.com | 2/5/2026 4:06:43 PM | SENT |
| Bonnie Chester | | bonnie@stonehilton.com | 2/5/2026 4:06:43 PM | SENT |
| Alexander Dvorscak | | alex@stonehilton.com | 2/5/2026 4:06:43 PM | SENT |
| Rosalinda Luna | | rosie@stonehilton.com | 2/5/2026 4:06:43 PM | SENT |
| Maria Mendoza | | maria@stonehilton.com | 2/5/2026 4:06:43 PM | SENT |
| David Finkel | | dave@stonehilton.com | 2/5/2026 4:06:43 PM | SENT |

# EXHIBIT B-4

CAUSE NO. <u>26-BC11B-0007</u>

| | |
|---|---|
| ENVIROTECH VEHICLES, INC., <br> *Plaintiff*, | THE BUSINESS COURT OF TEXAS |
| v. | ELEVENTH DIVISION |
| KINGBIRD VENTURES LLC and <br> EFRAIM DIVEROLI, <br> *Defendants*. | HARRIS COUNTY, TEXAS |

## <u>TEMPORARY SEALING ORDER</u>

Envirotech Vehicles, Inc. filed a motion for a temporary sealing order under Texas Rule of Civil Procedure 76a(5) and supported the motion with a verification. Plaintiff proved a compelling need for a temporary sealing order and demonstrated that delay in sealing would result in immediate and irreparable harm to a specific interest. Notice was not required because no other parties have made an appearance or filed pleadings in the case.

Therefore, the Court orders that Plaintiff Envirotech Vehicles, Inc.'s Verified Original Petition and Request for Temporary Restraining Order and Temporary Injunction ("Plaintiff's Original Petition") and Exhibits A–F in this case be temporarily sealed until the Court hears the motion to place the records under permanent seal.

Further, the Court orders that the Clerk of the Texas Business Court temporarily seal Plaintiff's Original Petition and Exhibits A–F.

Further, the Court orders that Plaintiff's motion to permanently seal court records be heard in open court on _____, 2026, at _____ o'clock a.m./p.m., in the Texas Business Court, Eleventh Division, in Harris County, Texas.

Further, the Court orders that Plaintiff immediately give the public notice, as required by Rule 76a(3), of its request to place the records under permanent seal.

Signed this __ day of February, 2026.


_____
JUDGE PRESIDING